Mr. Winograd? Yes, Your Honor. I got it right? Indeed. All right. We'll hear from you. Judge Agee, and may it please the Court. Since the early 1980s, immigration judges and the Board have granted requests for administrative closure in nearly half a million cases. And until last year, no one questioned their authority to do so. But last May, the Attorney General held, in matter of Castro-Tum, that IJs and the Board do not have the authority to administratively close cases. And he invited the Department of Homeland Security to restore more than 350,000 closed cases to the active dockets of the immigration courts. Your Honor, the Attorney General's decision was as flawed from a legal standpoint as it was misguided from a practical standpoint. Under Federal regulations, IJs and the Board plainly possess the authority to administratively close cases. And even if the regulations were unclear, the Attorney General's decision would not be entitled to deference because it reversed nearly four decades of agency policy, and because the decision was simply unpersuasive on its own terms. The Court should thus hold that matter of Castro-Tum was wrongly decided and that IJs and the Board do have the general authority to administratively close cases. So which specific statute or regulations do you say grants the administrative closure authority? Yes. We do not rely on any specific statute. We rely on 8 CFR 1003.10b and 1003.1d12, which say that IJs and the Board may take any action that is appropriate and necessary for the disposition of a case. Well, both you and the government leave out in your arguments the next part of that regulation, which says that any action must be consistent with their authorities under the Act and regulations, which would say to me that there has to be some other outside authority that it is consistent with. Otherwise, you've just got a bootstrap argument based on this any action language. I don't see how you can derive the authority from that language. Admittedly, I don't think the government makes that argument, but when I look at the regulation, the plain language seems to say to me that there has to be some other existing authority that you take any action consistent with. Sure. Well, a few responses to that, Your Honor. First, as you note, the government did not make that argument and neither did the Attorney General in his decision. And, of course, under the Chenery Doctrine, this course is limited to the reasoning provided by the agency. That being said, I do not think that the language, the consistent with language is necessarily akin to, for example, the necessary and proper clause in the Constitution where it authorizes Congress to pass laws that are necessary and proper to the execution of the foregoing powers. Here, what I would say is that so long as it is not inconsistent with any other directive in the Act of Regulations, then it would be consistent with. So to give an example, the Act states that if an alien fails to appear for a hearing and there is clear and convincing evidence of removability, then he shall be ordered removed in absentia. So in that case, it would clearly be inconsistent to administratively close a case, as the Attorney General held in matter of cast or tongue. But so long as there is nothing, there is no directive that administrative closure would be inconsistent with, our position is that it would be consistent with their powers. And, of course – I understand your argument, but it seems fairly circular to me. But as you say, the government doesn't make that argument. Sure. Well, I mean, in our view, the only fair reading of that regulation is that because administrative closure is indisputably in action, is that IJs and the Board have the power to administratively close a case whenever they deem it appropriate and necessary to do so in that particular case. Now, we, of course, do not dispute that administrative closure is not appropriate and necessary in the vast majority of cases. And we do not dispute that administrative closure – that the Attorney General can provide guidance and limits on when administrative closure is appropriate. But that is not what the Attorney General did in this case. He held that IJs and the Board don't have the power to administratively close cases, regardless of the reason for the request, and, indeed, even if both parties agree that doing so – Well, you do have the BIA decision. I'm not sure I can pronounce it. Matter of abetezion. Matter of abetezion, yes, Your Honor. Say it again. Matter of abetezion. Abetezion. And part of that language is to exercise independent judgment and discretion in determining the cases coming before them. Precisely, Your Honor. And we agree wholeheartedly with the analysis in matter of abetezion, which relied on these regulations, the ones I mentioned, 1003.10b and 1003.1d12. Now, the language that the government relies on is the word disposition in those regulations and also because those regulations encourage IJs and the Board to resolve questions in a timely manner. But we think that argument fails on its own terms because administratively closing a case on the front end can save years of litigation on the back end. Aliens who were eligible for provisional waivers, like my client, are a perfect example of this. Once the provisional waiver is approved, all that is left for the immigration judge to do is either grant voluntary departure or terminate proceedings once the alien returns as a lawful permanent resident. But under a matter of castor tum, many aliens who would have otherwise applied for provisional waivers will inevitably apply for forms of relief, like asylum and cancellation of removal, for which they will need to wait years to even receive a hearing. And, of course, if those forms of relief are denied, many of those aliens will then appeal to the BIA, which itself is so backlogged that it now takes more than a year after the notice of appeal is filed to simply receive a briefing schedule. So simply because administrative closure results in a temporary suspension of the proceedings does not mean that it prolongs the overall length of the proceedings. To the contrary, it often saves IJ's work because it allows aliens to pursue forms of relief that require little or no bench time to actually resolve. Now, if there is any doubt that any action regulations confer the authority to administratively close cases, that doubt would be eliminated by the fact that other regulations not only reference administrative closure but require cases to be administratively closed in certain circumstances. So to cite just one example, 8 CFR 1214.3 states that when an alien appears eligible for a B-nonimmigrant status, the immigration judge or the board, whichever has jurisdiction, shall administratively close the proceeding. So simply put— Well, in a response, I'm not sure the government makes this argument either, but it seems like to me it would be a rational argument in that case to say that the specific regulations are specific delegations of the authority by the Attorney General to enter into administrative closure. Same thing with judicial settlements, and that would be consistent with his view in Castro-Ton. I think that argument might potentially have force if, for example, all of the regulatory provisions regarding administrative closure were grouped in the same subsection, and there was a regulation that said immigration judges and the board may administratively close proceedings for A, B, C, or D reasons or shall administratively close. Am I right? The government did not make—I'll be asking the government as well, but I don't think they made that argument. Well, the Attorney General argued that the regulations that reference administrative closure would be rendered superfluous if immigration judges already had that authority, but we think that that's simply a non sequitur because IJs could not be required to administratively close proceedings if they did not have a preexisting power to administratively close proceedings. And with respect to the settlements, I mean, our argument is that if immigration judges and the board didn't already have the power to administratively close proceedings, how could the Attorney General have entered settlement agreements requiring them to do so? I mean, that strikes me as a little circular because that would be the fact of the Attorney General entering into the agreement or the DOJ promulgating the regulation. That would be a specific delegation of their authority. At least it seems like to me you could make that argument, and it would be a rational argument to make. To the contrary, Your Honor, the Attorney General said in matter of Castor Tum, and we don't disagree, that immigration judges and the board can only exercise powers that are delegated to them in the regulations. The settlements are, of course, not regulations themselves. So the settlements could not have been entered or validly entered were there not a preexisting regulatory basis for immigration judges and the board to administratively close cases. That would be our position. If the Court does agree that the existing regulations do confer the general power to administratively close cases, then we would ask the Court to hold that the Attorney General could not revoke that power via adjudication. The Attorney General is, of course, free to promulgate regulations that limit or take away the ability to administratively close cases, but they would have to be published in the Federal Register and preceded by a comment period. The Attorney General appears to suggest that matter of Castor Tum was a general statement of policy that is exempt from the notice and comment requirements in the APA. But even if that claim was true, it would be self-defeating because general statements of policy don't carry the force of law, and they must allow room for discretion in individual cases. So if the Attorney General was correct that matter of Castor Tum was a general statement of policy, then the board would have erred in this very case by reading Castor Tum to hold as a matter of law that it did not have the power to administratively close the proceeding. If the Court were to conclude that this was an ambiguous topic, can we move to the question of deference? I was just about to address you, Your Honor. So our position is that this matter of Castor Tum would not be entitled to deference under either our or Skidmore. With respect to our deference, we take the same position that the Solicitor General does not dispute in this case, which is that a regulation, an agency's interpretation of a regulation is not eligible for our deference to the extent that it conflicts with a prior agency interpretation. And that is precisely what we have here. A matter of Castor Tum overruled not only two published board decisions, but 40 years of administrative practice. Should we wait on the Supreme Court's decision in Kaiser? Because it seems like that may mark a sea change in this area of the law. It depends, I would say. If the Court is prepared to rule in our favor under the plain language of the regulations, then there would be no need to. If the Court thinks that the regulations are ambiguous, then, yes, I think it would behoove the Court to wait for Kaiser to come out. It will be out by the end of June, of course. And if the Court would like to solicit supplemental briefing after Kaiser comes out, we would be happy to provide that. The — so as I was saying, the government does not dispute that an interpretation is not entitled to our deference if it was inconsistent with a prior interpretation. They argue that matter of Castor Tum did not itself represent a change in policy because no prior attorney general had personally issued a decision authorizing administrative closure. We think that's beside the point because board members are delegates of the attorney general, and as such, they speak for the attorney general. That's why the respondent in this case is the attorney general and not the BIA. So the agency in question for purposes of our deference is simply the Department of Justice, and I don't think it can be disputed that matter of Castor Tum represented a shift in DOJ policy. If the Court does not provide our deference, the only remaining form of deference would be under Skidmore. The government does not cite Skidmore or request Skidmore deference in their briefs, so our position would be that that argument would be waived. To the extent the Court wishes to consider Skidmore deference, we think it should not grant Skidmore deference, not only because Castor Tum represented a change in agency policy but because the decision is simply unpersuasive on its own terms. So to begin with, the attorney general did not provide any meaningful guidance for how immigration judges and the board should proceed in cases that would have previously been administratively closed. All he said was that they can grant continuances instead. While continuances may sometimes be an adequate substitute, in many cases they are not. So, for example, under DHS regulations, aliens may only apply for a provisional waiver if their case has been administratively closed. It is not enough for a case to be continued. Am I right that this is a case of first impression? It is, Your Honor. It is a case of first impression. And it would, in fact, affect 350,000 cases? Well, I don't know how many cases are administratively closed as of this minute. At the time of the attorney general's decision, he said that there were 350,000 administratively closed cases. DHS has slowly but surely been moving to recalendar those cases. But I could confidently say that, yes, it could potentially affect, well, that's nationwide. In the Fourth Circuit, I don't know how many cases are administratively closed, but certainly in the thousands or tens of thousands, I would imagine. So, with respect to provisional waivers, at least, the attorney general's decision has made it impossible for aliens in removal proceedings to even apply for them. And I think if Matter of Castor Tum was upheld, then the DHS regulation in question, I think, would almost certainly be struck down as arbitrary and capricious. Secondly, in cases like Matter of Avitesion, where the alien has a petition pending before USCIS, the use of continuances can actually extend the time necessary to adjudicate the petition because the alien's file must be transferred back and forth between USCIS and ICE before each hearing, as the recall in Matter of Avitesion, the immigration judge was required to grant seven continuances to allow USCIS to adjudicate the petition before he ultimately administratively closed proceedings. I'll say that's the end of my time for rebuttal. Thank you very much, Ms. Phillips. May it please the Court, Rebecca Hoffert Phillips on behalf of the United States Department of Justice. I want to point out that I made the arguments that Your Honor is saying the government did not make. I made the argument, if you look at page 30, in terms of, as he quotes it, his any action argument. He actually refers to it as the any action argument because he reads it only as any action. He's not reading the rest of the sentence, and I point that out beginning on page 30. As far as whether I made the argument about specific regulations, meaning that it was only authorized in specific circumstances, that's on page 36 of my brief. In terms of the Court's most recent question, because I do want to just mention that because I'm probably not going to spend any more time on it. Since this decision issued, ICE has filed approximately 830 motions to reopen based on Castro-Toome, and the Board has told me that it has granted, but this doesn't count pending motions, 4,849 motions to recalendar without being able to distinguish between Castro-Toome-based motions or other motions to recalendar that have nothing to do with Castro-Toome issuing or not. They weren't able to distinguish that. In case the Court was, Your Honor, was curious about that. Moving on, though, to the substance. Let me ask you. Yes. There's a take-up kind of where we left off with opposing counsel. If we reach the conclusion that we must consider whether deference is owed to the Attorney General's opinion, it strikes me that the argument made by the Solicitor General in the Kaiser v. Wilkie case contradicts your argument in this case, because as I understand the briefing there and the oral argument, the Attorney General said that our deference was only appropriate among other conditions where there is fair warning to the people or entities affected by the regulation, which apparently there would not have been here with Castro-Toome, and a determination that the interpretation is not inconsistent with the agency's previous views or does not disrupt settled expectations based on agency acquiescence or contrary practice. So if we were to reach that point, why wouldn't we just follow what the Solicitor General argued in the Kaiser case? Because that seems to kind of take the legs out of your argument. Okay. I'll definitely. This is all assuming that we have to get to our deference, and the government's position is actually quite consistent with Kaiser, which is we took a best reading approach of the regulations here, and we're not actually first and foremost arguing any ambiguity whatsoever. He's arguing, actually, that they're unambiguous in his favor. The government says they're unambiguous in the government's favor. And the government's position is that the court shouldn't even reach our deference, and also that Skidmore actually doesn't apply to regulations. I haven't found a case where Skidmore goes hand-in-hand when Chevron doesn't apply, but we're not looking at the alternative to Chevron here. Right. Well, let's just assume for purposes of argument that there are good arguments on both sides, and we conclude it's a jump ball. So now it's time to consider deference. So what does the Solicitor General's argument in Kaiser do to your case here? Well, Your Honor, if you look at administrative closure as a docket management tool, which is what it is, it turned into this expectation of substantive relief. As a docket management tool, it's largely unreviewable under Vermont Yankee. It's actually subject to Vermont Yankee standards, where you're looking for constitutional and substantial infringement on rights there. You're not actually reviewing it under the proper lens in that respect, because when you get to the actual substance of the decision, when it's a procedural the courts are not free to engraft their ideas about efficiency. For example, he's arguing all these things about why he believes, rather than what the Attorney General has stated would be more efficient, his beliefs about efficiency. That's for the Attorney General to decide. The Attorney General was free to use procedures or not to use procedures that he believes are going to make things more efficient. And as the Attorney General, that is absolutely his prerogative. And that's exactly what Vermont Yankee says the court is not entitled to step in and give its opinion. And what he's asking the court to do is make some reasonableness argument about what it means to be efficient here. It's a procedural mechanism. This is not substantive relief. And there's actually no interpretation here, as I mentioned. It's just a plain reading of the regulations when read in their entirety. And I direct you to page 35 of my brief where I do a string cite of all of the regulations when read in their context and their entirety speak to disposition, to prompt disposition, to as soon as practicable, to a timely manner. These are all things, if you're trying to abide by a regulatory mandate for adjudication, you don't abide by it by not adjudicating and by just leaving cases in limbo. This is what the Attorney General recognized, is that there is a regulatory mandate here saying we're adjudicators, let's adjudicate. We're not here to put cases in limbo. This is what he read as being the efficient way. So does our deference apply in this case? I mean, I'm not quite sure what your argument is. Are you saying that this is a procedural rule like changing the number of days notice that you get for a hearing? Your Honor, the reason why we argued, it was mostly in response to whether, you know, if this court were to find going down his path of argument, in his line of reasoning. That's actually not the government's case in chief, is I guess what I'm saying. This is an alternative. The alternative is that Avitesian was very poorly, very actually not well-reasoned at all and couldn't really create some expectation of exactly that the regulations would provide for something because they were extrapolating. The board in that case cited a case where there had been a court settlement and cited the general powers regs and said we're going to find authority here and created, you know, a rubric for giving administrative closure. And until Avitesian, there had actually been no attempt to interpret the regulations whatsoever. So when you talk about there's been some change, there was no actual prior interpretation of the regulations. There's no change when there's no analysis whatsoever. There was no searching review in Avitesian, and certainly not in any case prior to that. Even if all that's true, you've got 30 or 40 years of fairly consistent administrative practice where there are general grants of administrative closure. And the government may be right. There may not be a statutory authority for that. But the Solicitor General in Kaiser, as well as existing case law, says that in deference considerations, that's something a court will consider. And I'm not sure you've really answered the question of what's the impact of the Solicitor General's argument in Kaiser on your case. In terms of how there was an expectation previously of administrative closure and why there should not be deference because the Attorney General has decided that there is not, is that correct? I just recited the factors the Solicitor General told the Supreme Court was, if you can continue our deference, then these are the circumstances in which it should apply. And it would seem on its face that in this circumstance, unless Castro-Tum is some sort of a benign procedural rule, that that argument contradicts the government's argument in this case. The government doesn't believe that it does because there is fair warning that administrative closure was always a revocable procedural mechanism. It was always subject to not being available in any given case. It could have been taken away at any time. So this idea that there's an expectation that it's some sort of that you're changing that, it was always capable of being revoked. That was something that the Attorney General. Doesn't the rubric in abstizion mean that cases aren't actually left in limbo? There is a pending event that may affect the outcome of a deportation proceeding, isn't there? That there are reasons that collateral to the- There's a definite pending event that may affect the outcome of a deportation proceeding. Right, and so post-Castro-Tum, the Attorney General wants different procedures followed for that. So in other words, what there is now is the ability for DHS to file a motion to dismiss. So in other words, the way that prosecutorial discretion was being done was through this administrative closure mechanism that actually was never meant to be a tool that way of how DHS exercises prosecutorial discretion. The Attorney General wants it to go back to following the regulations that have always been there, which says that DHS can choose not to charge someone. They can exercise PD that way. Or during the proceedings, they can file a motion to dismiss and say that circumstances have changed and we now have new information about maybe eligibility for relief, maybe some other collateral event going on, and they can ask the IJ to dismiss the proceedings while they're ongoing. Or a removal order may issue and DHS can choose not to enforce the removal order, such as in the case of TPS or DACA or any other situation where an administrative stay of removal is filed. And I want to stay on that for just a second because the petitioner in my case, he actually doesn't need administrative closure to seek the relief that he wants. And I think that this is very critical here because he's still capable of seeking the exact form of relief that he wants, even from abroad. The other thing I want to mention is that when you have a removal order, if he had still been in the U.S., he also could have sought administrative closure by seeking an administrative stay of removal to prevent his removal from the U.S. and by filing a Form I-212. And if you look at the 28J that he filed and you look at the reason why his waiver was denied, you'll see that it wasn't denied because of admin closure. It was denied because he had a removal order at that point and he needed to do something extra and additional now to seek the waiver. But that's what it came down to, a Form I-212. Why shouldn't the AG follow the rulemaking process of the APA here? Well, what the AG was doing was simply reviewing what the regulations stated and what the law is, and basically he was allowed to simply tell his employees, the board and the board members and the immigration judges, that he was just looking at the statute and regulations. He didn't find anything there that was giving them any authority that they were exercising, and they had sort of taken that authority upon themselves that never really existed. And this goes back to what you were saying about Auer. There was never an existence of authority in the first place, and there was never an understanding that these regulations did in fact provide the authority that some adjudicators had assumed that they had. Well, I don't think that the Solicitor General's argument, and I could be mistaken about this, on that point in Kaiser dealt with authority. It dealt with previous administrative practice and the expectations that that raises. You could be right. It could be the same thing in other administrative law situations that the agency acts without clear authority, but it's the practice over time that the Solicitor General said was a factor in their recast version of Auer. So that's what I was asking about. And, Your Honor, I think it seems to me that if you wanted to follow whatever is the decision that results from these arguments and litigation, that you would probably have to wait for the decision to be decided in terms of, you know, just even if I said this is our position or not, we don't know if that's the position that will be adopted by the Supreme Court. And so if the concern is how do we apply the Auer deference, I would say we could do supplemental briefing if there's some specific new rule or way of looking at things here. Because from the government's position, there has never been the authority, and there was a practice that was never substantiated by anything other than this assumption, and that there was always a warning that this could be revoked and that this is a matter of procedure, which puts it in a fundamentally different category than some other substantive relief. And that's how the government would distinguish the situation here where you have warning that you can always never be entitled to administrative closure. Even if you have it, it can be taken away at any point. It can be taken away. So it's just the same as if you thought there was authority in the regulations and then it gets taken away. It was always able to be taken away. That's how it was designed in the first place. It was meant to be a temporary pause. And I think this is the problem, is that it morphed into something entirely different, where all of a sudden you had immigration judges on the board unilaterally closing proceedings over the objection of DHS, and the DHS waiver was created for people they deemed worthy of administrative closure and being able to seek the waiver. This petitioner had a DUI conviction. The DHS said, you know what, he can still get that waiver. He's still going to file the I-130. He's going to ultimately get to adjust. We're just not going to make it as easy for him as he might want it to be. He wants to stay here and be able to do all the adjustment here. The DHS had this waiver set up. It did make administrative closure a prerequisite in the waiver. As I mentioned, you can have a removal order and still seek the waiver. You can be removed and still seek the waiver. It didn't take away any form of substantive relief that isn't still available to him. It just wasn't as convenient for him. He committed a DUI conviction. The DHS made a decision in that regard. This is sort of why his position, that the court should somehow order him back, order administrative closure. I mean, it's just kind of so far and beyond what his remedies are, basically, in this situation. What you have here is the Attorney General as the ultimate authority over his own regulations. And I would say that because it's the Attorney General, Congress specifically delegated the authority to him. He has the authority to fashion his own immigration courts in the way that he sees fit. He runs the immigration courts. He gets ultimate deference, not some sort of diminished deference. As I mentioned, the deference is not diminished in any way because it's the Attorney General versus the board. He is the ultimate authority on how to run his immigration courts. And I think that when it comes down to deference to him, I mean, it's at utmost when he's dealing with a procedural issue, as I mentioned. The other thing I wanted to mention is that – sorry. You meant there was another question? He was saying that basically administrative closure, you know, always saves so much time. I think I actually mentioned that with the efficiency part of the argument, that it's not really up to him to decide what's efficient. Basically, the Attorney General, you know, didn't have to abide by the notice and comment, as I mentioned, because when you're reading the plain language of the regulations and you're just finding nothing there, you're basically just telling your employees what to do. And that's the employer-employee relationship. The board had to abide by the Attorney General's decision when it decided to grant the DHS's motion to reconsider. And I want to go back because this was in the context of a motion to reconsider by the DHS, and so the board could not have abused its discretion. And really, in terms of what the court is actually reviewing this case first and foremost is about whether the board abused its discretion in following an Attorney General precedential decision. The board had no choice, essentially, but to say, this is binding authority upon us. It wasn't arbitrary for the board to apply that precedent to this case. And so basically, once you have the board taking that proper action, what Petitioner could have done is he could have sought, as I mentioned, an administrative stay of removal. There are other ways of achieving results other than administrative closure. And so the Attorney General found that these other mechanisms, like continuances and all those other forms, could possibly be more effective and efficient in running his immigration courts. Did the court have any other questions that I didn't address yet? Okay. No. I saw anything else you want to tell us. Just except for the fact that, again, the court should really do the best. Consistent with Kaiser, the government is advocating for a best reading approach here and is not actually asking for deference when it comes to the regulations and that nothing was violated by the regulations when the Attorney General decides to change the procedures of the immigration courts. So unless the court has any further questions, the government will rest. Thank you very much. Mr. Winograd, you've got some time left on rebuttal. Thank you, Your Honor. If I could begin just by taking another stab at your initial question about the The Attorney General said in Matter of Castor Tum, this is at the top of page 285, that the any action regulation with respect to the board, Now, there is actually a separate reg that authorizes the board to accept untimely briefs. But the other two examples, there are no specific regs that authorize the board to do that. So the any action regs are sort of a catch-all mechanism that I would argue are distinct, that is distinct from the authority provided by, for example, the Necessary and Proper Clause in the Constitution, where it has to be tied to an enumerated power. To address a few other points, the issue in this case is not whether the board abused its discretion, committed an abuse of discretion in granting the DHS's motion to reconsider. The issue is simply whether Matter of Castor Tum was wrong to decide it. With respect to Skidmore, Skidmore does apply to regulations. I'm not sure why the government would argue to the contrary, since it would help them. But the Supreme Court so held that in Christopher v. Smith, Klein, Beecham Corp. That's cited on page one of our opening brief. With respect to the question about whether Petitioner can seek the same relief from abroad, yes, he can seek an immigrant visa from abroad, but the point is he would be abroad, and he would also have to for, you know, potentially a few years as opposed to being in the United States. So the fact that he is abroad is part of the injury, in addition to having to seek the preliminary waiver to overcome the removal order, which has a $930 filing fee and takes a year to 18 months to adjudicate. And with respect to whether administrative closure can be taken away as a matter of whim, under Matter of Abitision and Matter of WIU, that was not the case. To restore a case to the docket, the party opposing administrative closure, typically DHS, would have to present a persuasive reason for the case to be restored to the docket. So it isn't something that could simply be taken away as a matter of whim. With respect to picking up where I left off with respect to Skidmore deference and why continuances are not always an adequate substitute, under the regs, only immigration judges can grant continuances. The board cannot. So continuances are simply of no use in cases that are already at the board. If an event occurred while a case was at the board that would have previously warranted administrative closure, then the most the board could do would be to remand the case back to the immigration judge to consider whether to grant a continuance. And if the immigration judge denied a continuance, that decision could itself be appealed back to the board, and then the case would be simply back where it started. And then a final reason why it does not deserve Skidmore deference is that the attorney general failed to consider any alternatives to cure the perceived abuses with administrative closure. So, for instance, he could have instructed immigration judges to require parties to file status reports while a case was administratively closed, or he could have required the party requesting administrative closure to file a motion to recalendar within a certain period of time after the underlying event or action had transpired, or he could have allowed immigration judges to recalendar cases on their own motion. So the fact that the attorney general did not even consider possible ways to fix the problems that he perceived suggests that he was intending to throw the baby out with the bathwater. Now, if the court does rule in our favor, our final request is that its decision include two instructions to the government. First, the court should either order the court to administratively close the proceedings on remand or to simply make clear that petitioner's case would remain administratively closed as a result of the remand. Either way, the court would place my client in the same position that he was in after the board's initial decision, but before the board granted DHS's motion to reconsider. DHS, of course, would be free to file a motion to reinstate the appeal at any time, but that motion would be subject to the standard I referenced earlier. They would have to provide a persuasive reason for the case to be restored to the active docket. Second, the court should instruct ICE to facilitate my client's return to this country, as it did in Ramirez v. Sessions last year, as we noted in our 28J letter. USCIS denied my client's application for a provisional waiver because he has since become subject to a final order. That decision is not subject to being appealed or reopened, so because there is no right to do so, my client would be required to file an altogether new application to qualify for a provisional waiver. And aliens must be physically present in this country when they file the application in order to qualify for a provisional waiver. So unless my client is returned to this country, he would be unable to pursue a provisional waiver even if the court rules in his favor, unless the court has any further questions. Thank you. Thank you very much. We'll come down and greet counsel and take a very brief recess before we move on to the rest of our docket. This honorable court will take a brief recess.
judges: G. Steven Agee, Henry F. Floyd, Stephanie D. Thacker